1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SEAN MICHAEL EMMONS,                    No.  2:15-cv-1509-EFB

12              Plaintiff,

13        v.                                 ORDER

14   CAROLYN COLVIN, Acting
     Commissioner of Social Security
15
                Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

20   XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment.  For

21   the reasons discussed below, plaintiff's motion is granted; the Commissioner's motion is denied;

22   and the matter is remanded for further proceedings.

23   I.    BACKGROUND

24          Plaintiff filed an application for SSI, alleging that he had been disabled since January 1,

25   2009.  Administrative Record ("AR") 154-163.  His application was denied initially and upon

26   reconsideration.  *Id*. at 92-96, 100-104.  On July 25, 2014, a hearing was held before

27   administrative law judge ("ALJ") Mark C. Ramsey.  *Id*. at 28-69.  Plaintiff represented himself at

28   the hearing, at which he testified.  *Id*.

On January 9, 2014, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1]  *Id.* at 11-23.  The ALJ made the following specific findings:

1.  The claimant has not engaged in substantial gainful activity since May 31, 2011, the application date (20 CFR 416.920 *et seq*.).

2.  The claimant has the following severe impairments: status post open reduction internal fixation (ORIF) of the left wrist, left shoulder pain, hepatitis C, mood disorder, schizoaffective disorder, and antisocial personality disorder (20 CFR 416.920(c)).

\* \* \*

/////

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant is unable to perform fine manipulation with the left hand and limited to simple unskilled work.

\* \* \*

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on September 27, 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been disabled within the meaning of the Social Security Act, since May 31, 2011, the date the application was filed (20 CFR 416.920(g))

*Id.* at 13-22.

Plaintiff's request for Appeals Council review was denied on May 18, 2015, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-6.

II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

/////

3

1    *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

2    180 F.3d 1094, 1097 (9th Cir. 1999).

3         The findings of the Commissioner as to any fact, if supported by substantial evidence, are

4    conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

5    more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th

6    Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

7    conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

8    *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

9         "The ALJ is responsible for determining credibility, resolving conflicts in medical

10   testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

11   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

14   III.   <u>ANALYSIS</u>

15        Plaintiff argues that erred by (1) failing to explain what weight he gave the opinions of

16   plaintiff's treating physicians; (2) failing to fully develop the record; (3) finding that plaintiff was

17   not credible without providing clear and convincing reasons; (4) finding that plaintiff had the

18   RFC to perform medium work; and (5) relying on the Medical-Vocational Guidelines to find that

19   plaintiff was not disabled.  ECF No. 13-1 at 14-23.

20        A.   <u>The ALJ Did Not Err in Evaluating Records From Plaintiff's Treating Physicians</u>

21        Plaintiff first argues that the ALJ failed to adequately explain what weight he gave his

22   treating physicians, Dr. Payvandi and Dr. Morales.  *Id*. at 14-16.

23        The weight given to medical opinions depends in part on whether they are proffered by

24   treating, examining, or non-examining professionals.  *Lester*, 81 F.3d at 834.  Ordinarily, more

25   weight is given to the opinion of a treating professional, who has a greater opportunity to know

26   and observe the patient as an individual.  *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

27   1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to

28   considering its source, the court considers whether (1) contradictory opinions are in the record;

4

1   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

2   treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81

3   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional

4   may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.

5   *Id*. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is

6   contradicted by a supported examining professional's opinion (e.g., supported by different

7   independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

8   1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

9   However, "[w]hen an examining physician relies on the same clinical findings as a treating

10   physician, but differs only in his or her conclusions, the conclusions of the examining physician

11   are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

12       Plaintiff argues that the ALJ failed to given any explanation for why he disregarded the

13   treating physician's opinion that plaintiff "has significant loss of function of the left hand" with

14   no grip strength.  ECF No. 13-1 at 15.  While the treating doctor's report includes that statement,

15   plaintiff's argument overstates its context.  Dr. Payvandi performed surgery on plaintiff's left

16   wrist on February 12, 2011.  AR 335-336.  Ten days later, at his first follow-up evaluation,

17   plaintiff reported that his hand felt fine and expressed optimism about "how it already looks."  *Id*.

18   at 334.  Dr. Payvandi placed plaintiff in a short arm cast and instructed him to elevate his arm to

19   decrease swelling.  *Id*.  He further noted that plaintiff "will return to my clinic in four weeks at

20   which time we will remove the cast, obtain new x-rays, and arrange for him to see a therapist and

21   begin gentle range of motion exercises."

22       At plaintiff's next appointment, Dr. Payvandi removed plaintiff's cast and provided

23   plaintiff with a removable splint.  *Id*. at 332-333.  Objective findings on physical examination

24   included no grip strength and "a significant loss of function of the left hand."  *Id*. at 332.

25   However, Dr. Payvandi explained that plaintiff presented "with loss of range of motion, strength

26   and function about his left hand secondary to his fracture and surgical fixation along with

27   casting," and that plaintiff "is ready to go into a splint [and] in a month he'll be ready for formal

28   rehabilitation."  He identified plaintiff's goals as restoring his range of motion, strength, and

1    function to plaintiff's left hand.  *Id.*  Subsequent treatment notes reflect that plaintiff's range of

2    motion and grip strength improved.  *Id.* at 328-330.

3          Thus, Dr. Payvandi did not opine that plaintiff has significant functional limitations to his

4    left hand that would interfere with his ability to work.  Rather, he observed, unsurprisingly, that

5    plaintiff had reduced function and grip strength after having his arm in a cast subsequent to

6    surgery.  Dr. Payvandi did not provide any opinion regarding plaintiff's functional limitations,

7    and plaintiff's attempt to use his comment out of context is unavailing.

8          Plaintiff also appears to suggest that the ALJ failed to adequately consider an opinion

9    from examining physician Dr. Roger Wagner, who found that plaintiff "might have some slight

10   limitations with the left arm."  ECF No. 13-1 at 15 ("Plaintiff contends that the ALJ should be

11   found to have erred by failing to resolve the conflict between the opinion of Dr. Payvandi that he

12   had ' . . . significant loss of function of the left hand,' and the opinion of Dr. Wagner who found

13   that plaintiff ' . . . might have some slight limitations with the left arm.'") (citations omitted).

14   This argument also appears to be based on a misreading of the record.

15         Dr. Wagner performed a comprehensive internal medicine evaluation.  *Id.* at 341-345.  Of

16   significance here, Dr. Wagner found that plaintiff's left wrist had a limited range of motion, but

17   plaintiff did not have any significant pain over his wrist and exhibited good grip strength.  *Id.* at

18   341.  He opined that plaintiff could carry 50 pounds occasionally and 25 pounds frequently.  *Id.* at

19   345.  He also opined that plaintiff had no manipulative limitations with his right extremities, but

20   stated that plaintiff "might have some slight limitations with the left arm."  *Id.*  The ALJ,

21   however, accorded great weight to Dr. Wagner's opinion and determined that plaintiff "is unable

22   to perform fine manipulation with the left hand."  Thus, contrary to plaintiff's suggestion, the

23   ALJ did not reject Dr. Wagner's opinion.

24         Plaintiff also claims that the ALJ failed to provide any basis for rejecting an opinion from

25   plaintiff's treating psychiatrist, Dr. Eduardo Morales.  ECF No. 13-1.  However, the May 30,

26   2013 treatment note cited by plaintiff contains only Dr. Morales's clinical findings from his

27   examination on that date, and does not contain an opinion regarding plaintiff's functional

28   limitations or mental restrictions.  AR 357-258.  *See* 20 C.F.R. § 416.927(a)(2) ("Medical

                                                    6

1    opinions are statements from physicians and psychologists or other acceptable medical sources

2    that reflect judgments about the nature and severity of your impairment(s), including your

3    symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your

4    physical or mental restrictions.").  As noted by plaintiff, Dr. Morales did indicate that on the date

5    of examination plaintiff was not able to perform full time work.  AR 358.  The ALJ, however,

6    was not bound by that opinion because it concerns the ultimate determination of disability, which

7    is an issue reserved for the Commissioner.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

8    Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in

9    disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the

10   ultimate determination of disability."); *see also* 20 C.F.R. § 416.927(d), (d)(1) ("A statement by a

11   medical source that you are 'disabled' or 'unable to work' does not mean that we will determine

12   that you are disabled."  Such statements "are not medical opinions . . ., but are, instead, opinions

13   on issues reserved to the Commissioner because they are administrative findings that are

14   dispositive of a case; i.e. that would direct the determination of disability).  Thus, Dr. Morales did

15   not provide a medical opinion for the ALJ to consider.

16        Accordingly, plaintiff has failed to demonstrate that the ALJ erred in evaluating the

17   medical opinion evidence of record.

18        B.  The ALJ Failed to Fully Develop the Record

19        Plaintiff also contends that the ALJ erred by failing to fully and fairly develop the record.

20   ECF No. 13-1 at 16-18.

21        A claimant bears the burden of providing medical and other evidence to support his or her

22   claim of disability.  *Yuckert*, 482 U.S. at 146 ("At all times, the burden is on the claimant to

23   establish her entitlement to disability insurance benefits.").  However, the ALJ also has "an

24   independent duty to fully and fairly develop the record and to assure that the claimant's interests

25   are considered."  *Tonapetyan*, 242 F.3d at 1150.  Although this duty is present regardless of

26   whether claimant is represented, the ALJ must be especially diligent in exploring for all the

27   relevant facts when the claimant is unrepresented.  *Id.*  "Ambiguous evidence, or the ALJ's own

28   finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the

7

1   ALJ's duty to conduct an appropriate inquiry." *Id.* However, "[a] specific finding of ambiguity

2   or inadequacy of the record is not necessary to trigger this duty to inquire, where the record

3   establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

4   When the duty is triggered, the ALJ may discharge it "in several ways, including: subpoenaing

5   the claimant's physicians, submitting questions to the claimant's physicians, continuing the

6   hearing, or keeping the record open after the hearing to allow supplementation of the record."

7   *Tonapetyan*, 242 F.3d at 1150.

8         Plaintiff argues that the ALJ failed to ensure that all of plaintiff's medical records were

9   obtained.  ECF No. 13-1.  Specifically, plaintiff contends that the ALJ failed to obtain all records

10   reflecting mental health treatment he received after his release from prison.[2]  ECF No. 13-1 at 16.

11   Plaintiff appeared at the administrative hearing without counsel and testified that since his release

12   from prison in November 2010, he has received mental health treatment from Dr. Morales

13   through the "SAC Metro Parole Division."  AR 35-36.  He also stated that he was enrolled in

14   monthly mental health outpatient classes through the same agency.  *Id*. at 38.

15         The ALJ informed plaintiff that he did not have these records, but would try to obtain

16   them.  *Id*. at 36-37.  However, it does not appear that he ever did.  The record contains a single

17   progress note from Dr. Morales, dated May 30, 2013.  *Id*. at 357-358.  This progress note

18   indicates that May 30, 2013, was not the only date plaintiff received treating from this physician.

19   The document reflects plaintiff's report that he felt more stable on his current medication, but still

20   believed he was unable to function.  *Id*. at 357.  In addition to detailing the findings from

21   plaintiff's mental status examination, the document specifically states that no medications were

22   discontinued and no new medications were prescribed, and that plaintiff was scheduled to return

23   for a follow-up visit in 4 weeks.

24   /////

25

26         [2]  Plaintiff also argues that the ALJ failed to obtain a prison chronos stating that he could
not lift more than five or ten pounds nor engage in repetitive movement.  ECF No. 13-1 at 16.

27   Plaintiff is mistaken.  The record contains a Comprehensive Accommodation Chrono stating that
plaintiff should avoid repetitively using his left arm and should not engage in lifting more than 5

28   pounds.  AR 359-361.

1    Thus, the single treatment note from Dr. Morales indicates that plaintiff had previously

2    been seen by Dr. Morales and been prescribed medication, and that he was scheduled for a

3    follow-up appointment.  Furthermore, plaintiff informed the ALJ that he was receiving mental

4    health treatment from Dr. Morales.  *See id.* 35-36.  But despite the ALJ's statement that he would

5    obtain mental health treatment records, there is no indication from the record or the ALJ's

6    decision that he attempted to obtain additional records from Dr. Morales.  This is especially

7    problematic given that the ALJ discredited plaintiff's allegations regarding his mental

8    impairments because "[t]here are no mental health treatment records consisting of any mental

9    health treatments, therapy sessions, mental status examination and prescriptions for psychotropic

10   medications since the claimant's application filing date."  AR 20.

11   As the ALJ failed to fully develop the record, the case must be remanded for further

12   proceedings.[3]

13   IV.    <u>CONCLUSION</u>

14   Accordingly, it is hereby ORDERED that:

15   1.  Plaintiff's motion for summary judgment is granted;

16   2.  The Commissioner's cross-motion for summary judgment is denied;

17   3.  The matter is remanded for further proceedings consistent with this order; and

18   4.  The Clerk is directed to enter judgment in plaintiff's favor.

19   DATED:  September 29, 2016.

20   _____
     EDMUND F. BRENNAN
21   UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28   _____
     [3]  Because the case must be remanded for further consideration, the court declines to
     address plaintiff's additional argument.

9